Tilghman, C. J.
On the 17th May,, 1817, Hollingsworth was indebted to the plaintiff on a running account; the amount of which was in dispute, but afterwards was settled by arbitrators, who ‘awarded #2502 in favour of the plaintiff. The plaintiff drew three •promissory notes of #900 each, payable to Hollingsworth, which were indorsed by him for the accommodation of the. plaintiff, who had them discounted in the Bank of Pennsylvania, and received the full amount for his own use. The notes were dated 17fh May, 17th June and 21st June, 1817, and all payable 60 days after date. On the 28th June 1817, Hollingsworth made an assignment of all his estate to the defendant, for the benefit of such of his creditors living within the United States, as should execute a release to him ,o.f .all demands, within four months from the .date of .the assign *533 ment, and all such living out o£ the United States as should execute a release within six months from the said date. The plaintiff executed a release within four months, as did also many others of Hollingsworth’s creditors. About the time of the execution of the plaintiff’s release, (the 19th July 1817,) the first of the said promissory notes became due, and was protested for non-payment; and the other two were also protested at maturity for the same cause. The Bank of Pennsylvania, the holders and owners of the said notes, did not execute a release within four months, according to the condition of Hollingsworth’s assignment. On the 19th November 1817, the plaintiff made an assignment of all his estate to George Stanbridge, Thomas Brown and John Turner, for the benefit of such of his creditors as should execute a.release of all demands against him within 60 days from the date of the assignment.
On the 16th January 1818, the day on which the arbitrators decided, that the debt due from Hollingsworth to the plaintiff amounted to $2502, the defendants wrote a letter to the President and Directors of the Bank of Pennsylvania; in which they told them, “ that the signing by them of John M'Leod’s releasé would not in any manner prejudice or weaken the claim of the Bank against the estate of Jehii Hollingsworth, Jr. as indorser of certain notes of John M'Leod, amounting to $2700, protested and unpaid in said Bank.”
Although the fact is not stated, yet the probability is, that in consequence of this letter the Bank of Pennsylvania executed a release to the plaintiff within the 60 days, prescribed by his assignment. On the 3d July 1818, the defendants declared a dividend of 50 per cent, on the estate oif Hollingsworth; and on the 4th March 1819, the3' paid to the Bank of Pennsylvania $1250 99, being a dividend of 50 per cent, on the three notes, including the costs of protest. Early in Januar3r 1820, the assignees of M‘Leod declared a dividend of 75 per cent, on his estate; and on the 24th of that month, they paid the Bank of Pennsylvania 75 per cent, on their claim against ■M‘Leod on two notes, indorsed by him and drawn by John Bradley, but only 50 per cent, (amounting to $1350,) on the three notes, drawn by M'Leod and indorsed by Hollingsworth as before mentioned.
By a writing bearing date the 28th January, 1820, in which it was recited, that the plaintiff had paid 75 per cent, on the amount of his debts, his creditors authorised his assignees to re-assign to him “all the property then remaining in their hands, unappropriated, whether real or personal, free and discharged of any claim of the said creditors. This writing was signed by all the plaintiff’s creditors, the Bank of Pennsylvania included, at different days between its date and the 8th of February ensuing; on which last day the plaintiff’s assignees, in compliance with the said writing, " reconveyed to him all his property of any kind, then remaining unappropriated in their hands. It is admitted, that by virtue of this *534 reconveyance, the plaintiff became entitled to a good debt of $600, besides some smaller matters ; and it was contended by his counsel, that he was also entitled to recover of the defendants 50 per cent, of the $25(Í2, due him on his account against Hollingsworth, with interest from the time that the dividend on Hollingsworth’s estate was declared by the defendants.
A majority of the District Court were of opinion, upon the case thus stated, that the plaintiff was not entitled to recover the whole or any part of his claim.
It seems to have been agreed by the counsel on both sides, that the payment made by the defendants to the Bank of Pennsylvania, was contrary to the trust declared in Hollingsworth’s deed of assignment, because the Bank had not executed a release within 4 months. Supposing then, that by this payment the defendants were placed in the situation of the bank, of what could they avail themselves? They could support no claim against the estate of the plaintiff; because it was understood before the payment was made, that the Bank was to execute a release to the plaintiff; neither could they support any claim against the estate of Hollingsworth in their own hands; because the payment to the Bank being contrary to the condition of the assignment, no agreement between the Bank and the defendants could give it validity. But if it had been stated as a fact, that the plaintiff was privy and consenting to the letter of .the 16th of January 1818, from the defendants to the President and Directors of the Bank, it would have barred his recovery in this action ;• because although the payment to the Bank would have been a nullity, as to those creditors of Hollingsworth who had released within 4 months, and had given no consent to the, said payment, yet the plaintiff would have been estopped from impeaching it, after having induced the bank to give him a release, founded in part on the consideration of that payment, by which the plaintiff had been a gainer. At present we must not presume the consent of the plaintiff, because it' is not stated as a fact in the case on which we are to decide. It was strongly urged by the counsel for the defendants, that the plaintiff’s release to Hollingsworth enured in equity to the use of the bank, the holder of the three notes drawn by the plaintiff But I cannot think so. The plaintiff released his own claim, founded not on these notes, -but on his account against Hollingsworth. There would have been more reason in saying, that Hollingsworth, the indorser of these notes, if he had them, might stand in the place of the plaintiff. But he did not pay them; on the contrary, he annexed a condition to his assignment, which precluded any pay- ' ment to the bank; so that the payment which was made, was unjustifiable.
It was argued also by the counsel for the defendants, that although no previous' consent was given by the plaintiff or his assignees to the payment made by the defendants to the bank, yet *535 they ratified it by their subsequent conduct in taking advantage of that payment; in cpnsequence of which a' dividend of only 50 instead of 75 per cent, was paid to the bank by the plaintiff’s assignees. But I cannot say that a ratification is necessarily to be inferred from the fact of a payment of only 50 per cent. What were the plaintiff’s assignees to do? When the bank claimed a dividend of no more than 50 per cent, how could the assignees pay more ? Or how does it appear, that those assignees knew that the payment made by the defendants to the bank, was illegal ? They might not have known that the bank- had not executed a release to Hollingsworth; and if they were ignorant of that fact, there is no ground for an inference, that the payment-made by the defendants was ratified. Granting then, that there has been no legal ratification of' the payment made by the defendants to the' bank, will the plaintiff be entitled to recover the whole dividend of 50 per cent, on the debt of $2502 due to him from the estate of Hollingsworth ? That I confess would be going farther than equity appears to me to warrant, and consequently farther than should be permitted .in this action, in which the plaintiff ought only to recover what the defendants cannot in good conscience retain. It is against good conscience for the plaintiff, first to appropriate to his own use part of the money paid by the defendants, and afterwards to insist on annulling that payment altogether, and recovering its whole amount from the defendants. But has he appropriated part of that payment to his own use? In substance he certainly has. But for that payment the assignees of the plaintiff must have paid a dividend óf 75 per cent, to the bank; instead of which only 50 was paid ; the consequence of which was, that the residue of the plaintiff ’-s estate, remaining in the hands of his assignees, and reconveyed to him by order of his creditors, was increased to the amount of the difference between 5Ó and 75 per cent, on the dividend paid to the bank.
The utmost that the plaintiff can in equity ask, is to be placed in the situation, in which he would have stood if the defendants had paid no dividend to the bank on the estate of Hollingsworth. A calculation has been made and agreed to by the counsel of both parties, of the sum which would be due to the plaintiff on that principle. This sum is $591 14; for which, together with interest thereon from the commencement of-this action, I am of opinion that judgment should be entered for the plaintiff.
Judgment for the plaintiff accordingly.